The next matter, number 161901, Kevin O'Connor et al. v. Oakhurst Dairy et al. v. Oakhurst Dairy et al. v. Oakhurst Dairy et al. v. Oakhurst Dairy et al. v. Oakhurst Dairy. I like to reserve two minutes for rebuttal. Your Honor, thank you. This opinion boils down to two fundamental rules. The first is a rule of grammar, the second is a rule of statutory interpretation that the Supreme Court adopted decades ago. The rule of grammar is referred to as parallel construction, parallel structure, or parallelism, which is the hardest one to say. And that rule applies with special force to a list, a series of items. And if you look at a basic grammar book or even Wikipedia, which I checked last night, they all agree that on that point, every item on the list needs to have parallel structure. So she likes reading, walking, and talking, but not she likes reading, walking, and to talk. So that rule here fits perfectly with the second rule, which is with overtime rights being so important, the U.S. Supreme Court has held, and this court has repeatedly followed, that when someone's arguing for an exemption to overtime, they have the burden of showing that the exemption clearly and unmistakably, unmistakably applies based on the terms of the exemption. And given that the employer's theory here completely violates the rule of parallel structure, so that we have a list of items everybody agrees on, those guys... But counsel, why is it that the main legislative manual seems to be so at odds with this universal rule that you're urging in terms of the appropriateness of having a comma before the last item in a serial? Your opponent relies heavily on that convention, so the rule that you're arguing for doesn't seem to be quite as universal as you're suggesting. The rule of parallel structure is not at all inconsistent with the serial comma rule, which is one reason I started with that rule, because that one is clear without any limitation. In other words, the drafting rule, nobody says, don't follow the rule of parallel structure, Your Honor. So I'm actually not focusing at the moment on the serial comma being there or not being there. I'm focusing on a more universal, undisputed rule of grammar. This is the fact that the word is distribution rather than distributing. It's not a gerund. Exactly. And if you look at Garner 2016, a gerund is a type of... They should have put the word and in there. Well, the word and, actually, Your Honor, shows further confusion, because it is conjunctive and they mean disjunctive. So the fact that the other sentence says there should be an and actually would add ambiguity as well. And there's an and in the sentence, which is a mess. It's a trademark of the sentence. When I was clerking for a federal judge, that would have been thrown back at me as not meeting basic standards of clarity and hardly being unmistakable. But that word and should be more... I thought you were such a good lawyer. On your reading, two things. You can see that it's odd that there's no or after storing. Well, no or or no and, Your Honor. Well, you just told me and would be a mistake. But that's what they do. They use and, if you look at the exemptions, in that very sentence, F. No, I understand that. So they're using and. I understand. And they actually mean or. So this is a messed up sentence. That's fine. But if you were writing it as you would like to write it and you were trying to draft it the way they think it means, the right word after storing would be or. I'm not saying on your reading the right word after storing should be or. Right. Adding the word or there would make my position stronger. Correct. But in no way does the lack of a why. Because it's an odd, if I wrote the canning processing of agricultural produce, people would say, I don't understand what you meant. Didn't you mean the canning or processing? Actually, Your Honor, the book by Justice Scalia and Brian Garner and someone on structural construction, the 7th edition, 2009, said when you're trying to show disjunction, not having any conjunction is much clearer than using and. It's not much clearer than using or. It actually will get confusing, too, here. Because sometimes or means and. Oh, I see. It says like and sometimes. So the clearest thing is to not, in criminal statutes, they recommend not putting a conjunction when you want it to be disjunctive. So I agree that that is weird. But the whole sentence is weird. Could you go back to Judge Lopez's point? Because the absence of a comma under the main legislative rules does seem to be in accord with main practice. It may not be in accord with Justice Scalia and Brian Garner. But it seems as though it should then include distribution, even though it's not a gerund. That's wrong because the standard here is unmistakably. Your Honor, you wrote an opinion a few years back in an arbitration case, Marie v. Allied Home, 2005, 402-F31, applying unmistakably to whether an issue is arbitrable or not. And the language cut in favor of it going to the arbitrator. But Your Honor said, under the unmistakably standard, it's not good enough. So that really changes the focus here to what's the best reading? The reading isn't even a question. The reading, is it unmistakable? And the main drafting guide, which was passed years after the statute was written, so that's a little bit of hindsight, but even going with it, it says, if you don't use a serial comma when there is complexity in the last item, it's going to be a mess. And so they did not follow the drafting rules, and they created a mess. The main manual does indicate that if that last item in the series includes some modifying language, that if that modifying language is not set up, that can create an ambiguity. And I guess that's what we have here. Absolutely, Your Honor. What they're talking for is modifying language, which appears to modify both the word shipment and both the word distribution. And the drafting guide says rewrite that. Right. They didn't do that. So if you're not going to rewrite it, you at least have to put a comma. They didn't do that. And they do use a comma, because in this exact same chapter, as our reply brief indicates, they have one of those lists where the next to last item, and it gets a little confusing as to whether it would connect with the last item, and they put a comma. So that blows out of the water the idea that they never used a serial comma. Yes, they did. It was the exact same thing. Am I right? The only, on your take, just reading the text, being just a grammarian, the only point against you with respect to this text, and use items since it's not a point against you, is the absence of a conjunction after storing. If there were a conjunction there, I think it would make my position stronger. But in no way, as you said, carry does nothing else that's against you at all. No, it doesn't carry the weight, the boulder of unmistakably with all the other grammarian rules in our favor. And for example, the for shipment or distribution, when you look at that, basic grammar is proximity as well. The word distribution is proximate to the preposition for, and because of its parallelism to shipment, grammar tells you those go together, and that's a prepositional phrase, adverbial prepositional phrase, that modifies packing, what the packing is for. So that is perfect English, and that's the way we interpret it. To get from our perfect English to saying unmistakably the opposite, there's no way the lack of a conjunction can do that job. Just to pick up on the text of it, could you just talk about the purpose a little bit? So my understanding is that prior to this enactment, distribution was within the exemption with respect to shellfish. Is that wrong? Yes, completely wrong, because we did not have an overtime law in Maine until 1965. That was the actual minimum wage law that they were talking about, and they're mixing apples and oranges. Overtime is separate, and the law court has interpreted that overtime law in Cormier, and they focus on the purpose, which is in the overtime provision. So the prior law where distribution was included was not aimed at the same kind of purpose, which would be imperative of getting stuff done quickly? It had nothing to do with overtime at all, because we didn't have an exempt max. It was minimum wage. But with respect to the minimum wage, would the same policy have been underlying it or not? What the law court said in Cormier is the only evidence we have in legislative history about the overtime law is right in the statute, and the purpose was to make sure workers get adequate and sufficient money and employees have an incentive to hire more employees. And based on that, they interpreted ambiguous issues in favor of overtime, and that's the law court, which is the highest authority on the meaning of the section. So we're just applying and following Cormier, which also follows federal law on the same approach, that when it's ambiguous, you construe it in favor of the overtime. Do you have any other questions? If we're going to hold you over, it's not at the expense of your two minutes. I'm glad to stay as long as you would like me to be here. I'll bet you are. So the magistrate judge was troubled by the joint argument ran afoul of the proscription against surplus language, and it was his view, I believe, that your argument makes the word distribution just a surplus. Now, I gather you can get that in light of a fair amount of factual material, and there's no facts at all issue. You don't need – this court here, you've got what it takes, the statute. That's all there is. There's nothing else. Other than the fact that we agree that their interpretation means we lose, and our interpretation means we win. This is a perfect case for an appeal. They know the review. It's just the facts. What I meant by that was there's this evidence that at Oakhurst in particular, they have a, I guess, a packaging department. They have a distribution department. Yes, Your Honor. They view those as separate functions. There are dictionary definitions. Shipment means one thing. Distribution means another. All of that was before the magistrate judge, was it not? Well, the dictionaries are before you, too. I guess my point on that is where the magistrate judge went wrong and the district court agreed is he misread Cormier, and he was looking at the wrong rule. It's not the rule of surplusage that Cormier talks about. But ship and redistribution are overlapping terms. We can see that. But the fact that they're overlapping in no way means that they're surplusage because if you look at the provision, canning, preserving, processing, those terms are almost synonymous, if not largely overlapping. So he took the rule against surplusage and turned it into the trump card when the Supreme Court and this court and the law court of Maynabal said, no, the trump card is unless it's unmistakably clear. Okay, so your argument that canning, processing, preserving, freezing, those are all internal to the company. Distribution is something that is external to the company. That's just, you argued that as a matter of language. Is that correct? Well, we don't think you should get into the speculating beyond what the law court said about the purposes to grant overtime. But if you want to speculate, and there's arguments you can brief, but we had to respond to the interest of the court on the other side. I don't think they're necessary, but you have to respond because sometimes you're wrong and the court moves ahead. Judge Barron has a question. Which I think is on the same vein. To address the rule against surplusage, you need shipment and distribution to mean different things, correct? I don't, if the rule against surplusage is the only rule you're looking at, yes, I just don't think that's your point. I understand, but the rule against surplusage is a rule, and if they don't mean different things, it violates that rule. It doesn't mean you lose. Maybe there's some other reason you would win, but the only way we can say you win without violating the rule against surplusage is for those things to mean different things, correct? It's a sentence that says processing and preserving already, so it's not respectful of the language to say, oh, shipment and distribution have to be different when you see a long list where processing and preserving are virtually synonyms in this context. Except they have some differences. I don't think so. I looked them up. I know a master food preserver. I discussed it with her. Yes, so you have one here as well that I don't agree with. Let me just add, this is the last point on this. If they're right, shipment, it should be packing for shipment or shipment, if they're right. In other words, if they're right, it doesn't make sense that it shifts from package for shipment to or distribution, because that suggests distribution is something different than shipment. And you create this weird lacuna where people who are packing for shipment are exempt, but people who are packing for distribution are not. Absolutely. And people that are handling it, unpacking it, and there's all kinds of things, problems that occur. But they're arguing, ultimately, Your Honor, I think the magistrate judge, that was absurd. You have got time reserved. Okay, thank you, Your Honor. Counsel, we'll give you a little more than 10 minutes, if you need it. Thank you, Your Honor. I appreciate that. May it please the Court. The only answer to the question before the Court is yes, that as three judges in Maine have already held, the distribution of perishable foods is a separate exempt activity under Maine law. And there are four reasons why that's the right answer. There are also reasons why Appendix 206, the two arguments, are not correct. First, we're talking about a series of activities that are set forth in a list. And like most writers, when the Maine legislature sets forth activities in a list, it uses a conjunction between the second-to-last item and the last item on the list. Indeed, according to plaintiff's own side of authority, Justice Scalia, that's the way most legislatures write statutes. And in fact, the overtime statute at issue here contains five different lists, and the Maine legislature used a conjunction before the final item on each and every one of those five lists. The only conjunction in this list of exempt activities is the or before distribution. And thus, the only reasonable way to read this statute is that distribution is a separate final exempt activity on the list. The second reason, again, looks at the way the Maine legislature drafted the overtime statute. Plaintiffs claim the absence of a comma before each item, because they say there ought to be a comma before each separate item in a series. Some grammar authorities agree with that, but not all. But we don't need to take sides in this argument among grammarians, because what matters here is that the Maine legislature did not use a serial comma in any of the lists in 664.3. Including ones that had a modified thing like this where it creates ambiguity by not having the comma? There is no. The plaintiffs looked outside of the overtime statute to find an example when there's no serial comma, or when there is a serial comma, rather. And so it's impossible to say. It's not relevant. The Maine legislature itself tells us that you don't have to have a serial comma, except when there is a set off phrase that by not having a serial comma, it would create some ambiguity. Actually, what I think what the drafting manual says, it doesn't say it's okay to use a comma. I think what the drafting manual says is this might create some confusion, and so be careful how you draft. Okay, great. So in all the examples you're giving, do they look like this, or are they just at the end of the list, there's another activity? In which case, I understand, you don't need the comma. There's no ambiguity produced. Your Honor, they don't look exactly like this. But I do think they look a lot more closely. I think the other examples are a lot closer to this one than the highly convoluted sentence that the plaintiffs point to in the definition of public employment agencies, which is a very complicated list with lots of conjunctions and lots of commas. I think this one is not that difficult. Counsel, how about the paramount construction? Absolutely. Just on its face, that argument seems to have some force. I agree, Your Honor. The way you're unpacking reflects the paramount construction. It is adjourned. Distribution is not. And so that seems to undermine your argument that distribution is a discrete separate activity such as processing and preserving. Thank you for raising it, Your Honor. And I think it's important to address it because I really think it's the only argument that plaintiffs make that supports their particular reading of the statute. Yes, they point out that distribution is a different type of noun than the gerund form of noun used for the other activities in the exemption. It is a fair observation, but there are two answers to it. First, I think relying on such a subtle grammar argument is pretty weak when there are such more obvious grammar problems with their reading of the statute. But second, although we can't know for sure, there is a basis in Maine statutes for finding that the legislature simply found it less awkward to refer to the distribution of perishable foods than to the distributing of perishable foods. The of after distribution makes the gerund form sound awkward, and the legislature, in fact, avoided that construction in other statutory sections. Indeed, we need look no further than a section the plaintiffs themselves cited to, Title 26, Chapter 13, Section 1043, to see that the legislature regularly avoided the gerund form prior to the word of. In 1043.1a1, the provision uses gerunds for all the activities in the list, except the last one, where instead of writing, quote, managing of livestock, it actually wrote management of livestock. In 1043.1a4, the provision uses gerunds for all the activities on the list, except the last one, where instead of writing transporting of eggs, it wrote the transportation of eggs. And even more telling, in 1043.11a-1-2, the statute says, quote, distributing meat products. But in 1043.11f16, it says distribution of newspapers. So, back to my arguments in favor of our reading, the serial comma. The absence of the serial comma does not support plaintiff's reading. It does the opposite. The absence of the serial comma is consistent with distribution being the final item on the exempt activities list, because that's how Maine wrote every other list in 664. The presence of a comma prior to... Excuse me, Counsel. Let me just... If, in terms of obviating all of these arguments, I mean, if there happened to be a comma after packing for shipment, or distribution of, would we have anything to be fussing about? There's a question that, in my view, using the serial comma would add a lot of clarity. It just seems to me, if they're quoting you fairly, they attribute to you a statement in the proceedings below in which you acknowledge that this construction that we're dealing with does create two plausible interpretations, which is sort of the definition of ambiguity. Was that an unfair attribution? I think it's unfair, and... Well, did you say it? We didn't say it. We're sorry? We did not say it. We did not say that it was ambiguous. We said there were two ways to read it, which is clear. We wouldn't be here today if there weren't two ways to read it. But there's lost sight... Did you say there were two plausible ways to read it? I can't recall the exact words, Your Honor, but the case lost sight in our brief makes clear that just because there are two ways to read something doesn't make it legally ambiguous. It just makes one of them wrong. And our argument is that there's only one reasonable way to read this statute because of where the only conjunction in the sentence is or in the phrase is, because it's consistent with the main practice with regards to the serial comma. And as the Court's already raised, the main standardized this practice. I would also point out... Before you... We're going to finish that thought. Well, what I was going to say is they pointed to this entirely different provision about public employment agencies, and there is a final comma there, but that's a problem for them in this case, I think, for two reasons. Well, first one, they didn't present that to the magistrate judge or the district court judge despite five briefs and two lengthy oral arguments, and they only raised it here on the reply brief. So I think it's waived. But the second thing is, whether it's waived or not, it doesn't get them anywhere because, I think, in pointing to how a different legislature drafted a different statutory section doesn't say much when we have an exact example in our statutory section. You mean the arguments you were making just about all the other statutes and how they use distribution rather than distributing? Yes, sir. Was that raised below? Was that raised below? No. Those are other statutes, not this statute. They raised that statute, actually, Your Honor. They cited that statute for a different purpose. I'll grant you, but that's the advantage of being the FLE than anything in the record. I can point to a firm judgment. Can you just explain to me on your theory why the final word of this top part of F is distribution rather than shipment? I can't tell you the answer to the question. Your position is that shipment and distribution mean different things or the same thing? My position is that packing for shipment wouldn't be any different than packing for distribution, which is the way they would have to read the statute. So your position is that they mean the same thing? So you have a surplusage problem? I'm just trying to figure out how we're talking. I agree. I see Your Honor's point, but the legislature, what it was doing, although it was a minimum wage statute that they were borrowing language from, the basic point is this. To me, because they use shipment and distribution, it would seem there's a fairly good argument that they were trying to be comprehensive about the type of packing activities that you're engaged in. If you take that, on your theory the odd thing is they seem focused on packing for this activity called shipment. But then there's this other activity called distribution that I don't know what that is in relation to shipment, but if you're engaged in that activity and what, not shipment? Or is the idea that that's all-inclusive of everything? It's all-inclusive of everything, and I don't see why it's not packing for distribution. Well, it's not packing for distribution in large part because the conjunction's in the wrong place. Then why wouldn't they have written it as packing for distribution or distribution or packing for shipment or shipment? I can't answer that question except to say that they were borrowing the word, the concept of distribution and the word distribution from the Minimum Wage Statute where it said distributing, but again because of the germ form and the examples that they used. I would also point out that their example again doesn't help because even in their example there's a conjunction at the end where it ought to be and there isn't one here on their reading. I also would like to look to the purpose of the exemption and that is that Maine courts have found that the overtime exemption reflects the legislature's decision that the industry of perishable food producers needs an overtime exemption. The purpose of the exemption is to achieve the most efficient production and delivery of perishable food. Judge Lopez has a question for you. I sense in your suggestion that the concept of packing for distribution is to suggest that that modifier packing for applies to distribution is a nonsensical proposition because distribution, do I understand you correctly that that's sort of a nonsensical argument? I'm not sure exactly which thing you're referring to. You seem to say that distribution is something so different that the notion of packing for distribution just doesn't make any sense. No, I wouldn't say that I sense that it said packing for distribution and that doesn't make any sense. I don't think that's what it said but that's not what it says. It says packing for shipment and then no cereal coming or distribution. That's what it says. I don't know if I still have time with the grace of the court or not. I will give you another minute. Thank you, Your Honor. I think that we've already talked about the candidate against surplusage. I do want to point out that their only positive argument is this notion of the gerunds which I think we've disabused already here this morning. They do put a lot of effort into arguing that the statute's ambiguous. There's a reason that that's their main argument is that they don't have anything to support I don't think their actual reading. So their best argument is to try to cast doubt on the way everybody else reads it including the three judges in Maine and then declare that any doubt means they win. But this narrow construction argument about overtime exemptions, it simply doesn't fit here. That's an argument about making sure the facts fit clearly within the words of the statute. Okay, that's in your brief. It is, Your Honor. I'd like to follow up on Judge Barron and Judge Lopez. I don't think I really answered you so well. I disagree about the rule against surplusage being the center of attention, but I may be wrong. So if it is the center of attention, for shipment or distribution, they have different meanings and they make sense for the very reason Judge Barron said. To clarify, shipment is when you get at FedEx and it gets sent to the customer directly. You buy your oranges and you have them sent to so-and-so for the holidays. The other one is you've got your own folks and they take it to the store and it's sold at the store and that's what happens here. So if they just said packing for shipment, they might have lost out on the milk going in the truck by the same company. So it makes perfect sense. They're not completely different, but they have, and we put the dictionaries in there and, Your Honor, the reason we put the defendant's own distinction that they used was not because we thought that that was going to carry the day, but just it shows that what we were saying was very plausible and that they were being, they were contracting their own internal terminology in construing a statute and saying it's clear in one direction. So with unmistakably on our side, that didn't make any sense, so that's why we made that point, Your Honor. I don't think our case hangs on that. The two words could be the same. The law could have made us say, sometimes the word or introduces to wit, and there's a case saying that, okay? So the idea that I was looking at it from the lens of unmistakably. Now, if the court was just looking at this in a normal situation where there wasn't an unmistakably requirement, the surplusage, I think, cuts much more in the other direction of confusion if you read it, as Judge Barron said, the way they were reading it, because it would leave out, I mean, maybe undersage, I don't know if that's the word, but they're leaving out shipment for distribution and they're leaving out shipment. So they're leaving a whole lot out. And the other thing is, this is not an absurd statute the way we read because things are super perishable when they're being, and Judge Lynch is probably going to correct me on this because I'm not a master food preserver, but we're making things more, more stable. I want to ask you about, I mean, this notion that the ever-legislative concern for the items we're talking about being perishable, and hence we don't want to impose these perhaps artificial overtime constraints at the risk of the spillage of food, I mean, you suggest that that concern does not apply to the function of distribution. I don't understand that. Why couldn't a lengthy delay in the distribution of a product raise the same legislative concerns about the perishability of products? I mean, you've got everything to do to get milk ready for distribution, but if there are lengthy delays in the distribution of it, that could affect perishability, could it not? Okay, so it's more perishable until you do the preserving process, and then you give it some more shelf life. So at that point, it does need to get to the store, but it's not as urgent. But the pasteurizing, the preserving, that is... But as F applies to things that aren't canned, processed, preserved, freezed, dried, marketed, stored, right? Which leads me to my second point, which is what the law court did in Cormier, says this statute doesn't... We don't really know what the legislative history is. All we know is sufficient... Thank you. ...overtime for the employees is the guiding force. Thank you.